UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RENE PINKETT,<br><br>    Plaintiff,<br><br>       v.<br><br>DR. LEONARD'S HEALTHCARE CORP., *et al.*,<br><br>    Defendants. | Civil Action No. 18-1656 (JEB) |

**MEMORANDUM OPINION**

After purchasing a B Yours Vibe 2 vibrator from Defendant Dr. Leonard's Healthcare Corp., Plaintiff Rene Pinkett sustained burns to her vaginal wall and leg. She thus sued several parties, including Dr. Leonard's, asserting a variety of tort claims. While another Defendant has moved to dismiss on personal-jurisdiction grounds, Dr. Leonard's seeks dismissal for failure to state a claim. The four counts asserted against it are for strict liability, negligence, breach of implied warranty, and negligent supervision. Finding that only the first may proceed, the Court will grant in part and deny in part Defendant's Motion.

**I.  Background**

The Vibe 2 is manufactured by Vee International, Inc., an entity that does business as Blush Novelties. See ECF No. 1 (Notice of Removal), ¶¶ 4–5; Notice of Removal, Exh. A (Complaint), ¶ 13. Dr. Leonard's is a retailer that sells the Vibe 2. See Compl., ¶ 14. Plaintiff purchased the vibrator from Dr. Leonard's mail-order catalogue in May or early June 2015. Id., ¶ 8. As Pinkett first used it, the Vibe 2 began "dramatically heating up and shocking the inside of [Pinkett's] vaginal wall." Id., ¶ 10. She immediately removed the Vibe 2 but dropped it on

1

the floor, where it bounced up and burned her leg. Id., ¶ 11. Plaintiff seeks damages for "severe[] and permanent[] injur[ies]" she suffered as a result. Id., ¶ 12. Pinkett sets out nineteen counts, which allege a series of four torts against Dr. Leonard's, Vee, Blush (although apparently not a separate entity), and John Doe, Inc.

Dr. Leonard's now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the causes of action against it. They include claims for strict liability (Count VII), negligence (XI), breach of implied warranty (XV), and negligent hiring, training, retention, and supervision (XVII). Vee has separately moved for dismissal on personal-jurisdiction grounds, which the Court will address in a subsequent Opinion.

## II.  Legal Standard

In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant [P]laintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005). The pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and she must thus be given every favorable inference that may be drawn from the allegations of fact. Sparrow, 216 F.3d at 1113.

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The Court need not accept as true, then, "a

legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III. Analysis

The Court will sequentially address each of the four claims at issue — Count VII for strict liability, Count XI for negligence, Count XV for breach of implied warranty, and Count XVII for negligent hiring and supervision. Following the parties' lead, the Court applies D.C. law in this diversity case. See Salve Regina College v. Russell, 499 U.S. 225, 226 (1991).

### A. Strict Liability

To state a strict-liability claim, Plaintiff must allege: "(1) the seller was engaged in the business of selling the product that caused the harm; (2) the product was sold in a defective condition unreasonably dangerous to the consumer or user; (3) the product was one which the seller expected to and did reach the plaintiff consumer or user without any substantial change from the condition in which it was sold; and (4) the defect was a direct and proximate cause of the plaintiff's injuries." Warner Fruehauf Trailer Co. v. Boston, 654 A.2d 1272, 1274 (D.C. 1995). The only dispute here centers on the second element, particularly Plaintiff's allegations regarding defect. Generally, there are three categories of defect: manufacturing defect, design defect, and insufficient warning. Id.

Here, Pinkett alleges both manufacturing- and design-defect theories. See Compl., ¶ 82. A product "contains a manufacturing defect when [it] departs from its intended design."

3

Restatement (Third) of Torts: Prod. Liab., § 2 (1998). A product has a design defect, conversely, where "there [is] a feasible way to design a safer product and an ordinary consumer would conclude that the manufacturer ought to have used that alternative design." Hull v. Eaton Corp., 825 F.2d 448, 454 (D.C. Cir. 1987). Defendant contends that Plaintiff has failed to state a claim because she has not identified or explained how the device in question deviated from the intended design or from other identical products, nor has she asserted a feasible way to design a safer product. See ECF No. 4 (Def. MTD) at 4, 5–6.

Pinkett has, the Court believes, pled enough to move to the next phase. Without the benefit of discovery, she has alleged that she followed the enclosed instructions, that the Vibe 2 nevertheless so heated up that it burned her, and that the product was thus "designed or manufactured with defective" electric or mechanical systems or components such that it caused injury in the course of customary use. See Compl., ¶¶ 9, 16, 19–20, 82. Pinkett has not yet examined the product's specifications nor had an opportunity to compare it to identical items. The allegations of manufacturing defect are thus as specific as they can be at this stage. Regarding a design defect, Dr. Leonard's is right that, ultimately, Pinkett will need to prove that "the magnitude of the danger from the product outweighed the costs of avoiding the danger," Hull, 825 F.2d at 454, but at this point, she has done enough to state a claim on that theory as well. See Price v. Stryker Corp., 270 F. Supp. 3d 226, 236 (D.D.C. 2017). Either theory remains available, moreover, as the Vibe 2 "fail[ed] to perform [its] manifestly intended function, . . . supporting the conclusion that a defect of some kind is the most probable explanation." Restatement (Third) of Torts: Prod. Liab., § 3 (1998); see also Stewart v. Ford Motor Co., 553 F.2d 130, 139 (D.C. Cir. 1977). At this stage, therefore, Plaintiff's strict-liability claim may proceed.

4

### B. Negligence

Defendant next contends that Pinkett cannot state a claim for negligence because it had no duty to inspect the Vibe 2 or to ensure it was free from defects before selling it. See Def. MTD at 7. Plaintiff offers no legal authority for the proposition that Dr. Leonard's did have such a duty, but rather argues cursorily that Defendant had some duty and failed to ensure the product was safe. See Pl. Opp. at 5–6. While there is no D.C. law on point, Maryland courts — whose decisions are "especially persuasive authority" when D.C. law is silent, see Saylab v. Don Juan Rest., Inc., 332 F. Supp. 2d 134, 142–43 (D.D.C. 2004) (citation omitted) — have ruled that where "a seller or non-manufacturing supplier is nothing more than a conduit between a manufacturer and a customer, the retailer ordinarily has no duty in negligence to discover the defects or dangers of a particular product." Eagle-Picher Industries, Inc. v. Balbos, 604 A.2d 445, 456 (Md. 1992). Plaintiff has offered no reason why her case should be an exception to this rule. The Court, accordingly, will dismiss the negligence claim.

### C. Implied Warranty

Moving along, Dr. Leonard's next argues that a cause of action for breach of implied warranty is entirely duplicative of one for strict liability. See Def. MTD at 9. Plaintiff acknowledges that she "is fully aware of the case law indicating causes of action sounding in strict liability and breach of implied warranty are duplicative in nature"; however, because "discovery has not yet begun in this matter," she believes "[i]t may be appropriate" to pursue a strict-liability claim as to one of the other Defendants "and only a breach of implied warranty cause of action against [Dr. Leonard's]." Pl. Opp. at 6. It is difficult to see why that would be so, and, in any event, she currently seeks to maintain both against Dr. Leonard's.

5

"In the District of Columbia, 'the difference between strict liability in tort and implied warranty, if any, [is] conceptual.'" Price, 270 F. Supp. 3d at 232 (quoting Wainwright v. Wash. Metro. Area Transit Auth., 903 F. Supp. 133, 139 (D.D.C. 1995)). That is because the two actions "are expressions of a single basic public policy as to liability for defective products." Wainwright, 903 F. Supp. at 140 (quoting Fisher v. Sibley Mem'l Hosp., 403 A.2d 1130, 1133 (D.C. 1979)). Although courts have recognized that an exception to that general rule may exist where, as here, a defendant is in privity with the plaintiff, see Price, 270 F. Supp. 3d at 232 (citation omitted), this Court sees no reason to invoke that exception where the claims for strict liability and implied warranty are identical. See Compl., ¶¶ 111–16. Should the claims diverge at a subsequent stage of the litigation, she remains free to seek reconsideration. This claim, too, thus falls by the wayside.

D. Negligent Supervision

To state a claim for negligent hiring, supervision, or retention, a "plaintiff must allege facts showing that the employer knew or should have known that the employee was incompetent, and that the employer, despite this actual or constructive knowledge, [hired or] failed to adequately supervise the employee." Stevens v. Sodexo, Inc., 846 F. Supp. 2d 119, 128 (D.D.C. 2012). Defendant contends that Pinkett has not set forth facts that would show that it knew or should have known that any of its employees were incompetent yet failed to act. See Def. MTD at 12. In response, Plaintiff contends only that she has adequately alleged that Dr. Leonard's sold the Vibe 2 knowing that it was defective and failing to exercise reasonable care. See Pl. Opp. at 7–8. More specifically, she alleges that Defendant "either knew of the defects or should have known . . . through the exercise of reasonable care and through proper training of their

6

respective employees." Compl., ¶ 22. Plaintiff reiterates that precise allegation, substituting first "supervision" and then "retention" of employees. Id., ¶¶ 23–24.

This is not enough. There is no mention of any specific employee or any allegation that Dr. Leonard's had any knowledge of malfeasance by one. The Court thus need not accept these "legal conclusion[s] couched as . . . factual allegation[s]." Trudeau, 456 F.3d at 193 (quoting Papasan, 478 U.S. at 286). The negligent-hiring, -supervision, and -retention count is dismissed.

## IV.   Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss. Counts XI, XV, and XVII of the Complaint will be dismissed, but Count VII — the strict-liability claim — may proceed. A separate Order consistent with this Opinion will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  September 28, 2018